[Cite as *State v. Smith*, 2026-Ohio-2113.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellee/Cross-Appellant

v.

Ethan Smith

    Appellant/Cross-Appellee

Court of Appeals No.  L-25-00150
L-25-00152
L-25-00153
Trial Court No.  CR-24-2387
CR-24-2536
CR-24-2637

**DECISION AND JUDGMENT**

Decided: June 5, 2026

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} In this consolidated appeal, appellant/cross-appellee, Ethan Smith, appeals

from the June 17, 2025 sentencing entries of the Lucas County Court of Common Pleas.

Appellee/cross-appellant, the State of Ohio, also challenges Smith's sentence, arguing

that the trial court erred when it failed to impose indefinite prison terms on each of his

qualifying felony convictions. For the reasons that follow, the trial court's judgment is affirmed in part, and reversed in part, and the case is remanded for resentencing.

## Statement of the Case and the Facts

{¶ 2} The portions of Smith's sentence that are being challenged involve three cases that arose out of two shooting incidents. One of the incidents took place on June 7, 2024, and the other on September 5, 2024. Two of the three cases relate to the September shooting, and the remaining case relates to the June shooting.

**The Indictments**

{¶ 3} **CR-2024-2387.** On September 23, 2024, the Lucas County Grand Jury returned a nine-count indictment related to the September 5, 2024 shooting. The indictment charged Smith with five counts of felonious assault, all in violation of R.C. 2903.11(A)(2) and (D), and all felonies of the second degree (Counts 1-5); one count of improperly discharging a firearm into a habitation, in violation of R.C. 2923.161(A)(1) and (C), a felony of the second degree (Count 6); one count of discharging a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3) and (C)(4), a felony of the first degree (Count 7); one count of improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B) and (I) and R.C. 2923.111(A), a felony of the fourth degree (Count 8); and one count of having weapons under disability, in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree (Count 9). Counts 1-7 each included a 3-year specification that Smith displayed, brandished, indicated possession of, or used a firearm, in violation of R.C. 2941.145(A) ("firearm specification"), and a 5-year

2.

specification that he discharged a firearm from a motor vehicle, in violation of R.C. 2941.146(A) ("drive-by shooting specification").

{¶ 4} At the time these charges arose, Smith was subject to community control relating to his conviction in a fourth case, Lucas County Court of Common Pleas case No. CR-2023-2979.

{¶ 5} **CR-2024-2536.** On October 24, 2024, the Lucas County Grand Jury indicted Smith on an additional count related to the September 5, 2024 incident. This indictment charged Smith with one count of attempted murder, in violation of R.C. 2923.02(A) and (D) and R.C. 2929.02(B), a felony of the first degree. In addition, it included a 3-year firearm specification pursuant to R.C. 2941.145(A) and a 5-year drive-by shooting specification pursuant to R.C. 2941.146(A).

{¶ 6} **CR-2024-2637.** On November 14, 2024, the Lucas County Grand Jury returned a 5-count indictment related to the June 7, 2024 shooting. This indictment charged Smith with one count each of attempted murder, in violation of R.C. 2923.02(A) and (D) and R.C. 2929.02(B), a felony of the first degree (Count 1); felonious assault in violation of R.C. 2903.11(A)(2) and (D)(1)(a), a felony of the second degree (Count 2); discharging a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3) and (C)(4), a felony of the first degree (Count 3); having weapons while under disability, in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree (Count 4); and improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B) and (I) and R.C. 2923.111, a felony of the fourth degree (Count 5). Counts 1-3 each included a

3.

3-year firearm specification pursuant to R.C. 2941.145(A) and a 5-year drive-by shooting specification pursuant to R.C. 2941.146(A). Count 4 included a 1-year firearm specification pursuant to R.C. 2941.141(A).

{¶ 7} The charges in this indictment arose while Smith was released on bond pending a resolution to the charges in Lucas County Court of Common Pleas case No. CR-2023-2979.

**The Offenses**

{¶ 8} The State presented the following facts in its sentencing memorandum, filed on May 23, 2025.

> **CR-2023-2979 [the fourth case]:** On November 25, 2023, [Smith] opened the glovebox of another person's car and observed a gun. He stole the gun, exited the vehicle, and shot at the vehicle while it was still occupied. He was indicted on December 28, 2023, for felonious assault with a three-year firearm specification and grand theft with a specification. [Smith] posted a cash bond. On the morning of June 7, 2024, [Smith] pled guilty to one count of felonious assault. He was sentenced to community control on a later date.

> **CR-2024-2637 [the June 7, 2024 incident]:** [Smith] and C.H. met in elementary school and had previously been friends. [Smith] was romantically interested in C.H.'s on-and-off again girlfriend, M.L. And because of this, C.H. and [Smith] had some ongoing issues.

> Just hours after pleading guilty to felonious assault for stealing a gun and shooting at an unoccupied vehicle, [Smith] drove to C.H.'s home[, where he] waited for C.H. to pull up to the curb outside of C.H.'s home. [Smith] then pulled up next to C.H.'s occupied vehicle and fired 14 rounds at C.H.'s vehicle. Although ShotSpotter picked up audio of 14 gunshots, only eleven 9-mm casings were recovered. C.H.'s vehicle had multiple bullet defects and C.H. was shot in the leg at least 2 times. C.H.'s pregnant sister was outside nearby during the shooting, placing her in harm's way. C.H. drove himself to the hospital, asked a stranger to park his vehicle, and went

inside to seek treatment. C.H. still has a bullet lodged in his leg from this attack. He has noticed that his legs are not as strong as they were before the shooting and cause him pain still. He has visible scarring both from the gunshot wounds and the surgery to treat his injuries that remind him of this violent attempt to end his life. C.H. initially did not wish to cooperate in the prosecution of this shooting, so charges were not filed.

**CR-24-2387 & 24-2536 [the September 5, 2024 case]:** Sometime after the June shooting, C.H. moved homes. [Smith] began asking M.L. to give him C.H.'s new address but she refused. In August 2024, [Smith] conducted internet searches on his phone for C.H.'s address. In the days leading up to the shooting, [Smith] searched for C.H.'s Facebook profile.

On September 5, 2024, while on community control for the 2023 shooting, [Smith] called M.L. and asked [her] if she warned C.H. that [Smith] was going to come shoot him. Specifically, [Smith] stated, 'You really called him and warned him?' When M.L. asked what she would have warned him about, [Smith] replied 'that I was gonna come shoot his ass.' He then asked her if she would be mad if he did shoot C.H. Apparently, [Smith] planned to meet up with C.H. somewhere but C.H. did not show.

[Smith] searched C.H.'s address on Apple Maps and then his phone began travelling from his home in Michigan to Toledo. His cell phone stopped communicating with the network completely after travelling into Toledo. At approximately 10:44 PM, a vehicle approached C.H.'s occupied home. Three distinct muzzle flashes can be seen coming from at least three shooters within the vehicle as [Smith] and his friends fired at least 39 bullets at C.H.'s home. Multiple vehicles were riddled with bullet defects, and the home had countless bullet defects going through the front of the house, travelling through multiple walls, and some reaching the back room of the home. TPD recovered 39 casings and around a dozen fired projectiles from the scene. Neighbors came outside, concerned for the safety of their other neighbors, as it was unclear initially how many homes had been shot.

C.H. was in the basement at the time of the shooting and was uninjured. He was placed in a police cruiser until he could be interviewed. In the cruiser, he complained that his legs hurt, and noted he had stitches in his legs still.

A two-year-old child, L.H., was shot in the back of the head. Law enforcement knew time was of the essence with L.H. and ran him outside to paramedics who were still staging as the home was being cleared. He was

rushed to the hospital. Body-worn camera footage from that ambulance ride shows him screaming, crying, and thrashing around in pain. Once at the hospital, he had to undergo surgery. While he appears to have made a full recovery physically, the extent of any potential vision issues will not be known until he is older. His mother indicated he has had behavioral and mental issues following this shooting, such as a fear of fireworks, and awakening in the night screaming….

C.P. was shot in the leg during the shooting. He saw L.H., a child he cared for as if he were his own, duck and put his hands up during the shooting and grabbed him. He discovered L.H. was bleeding from his head and tried to comfort him as L.H. cried. The gunshot to C.P.'s leg broke his femur, and he was unable to move. He felt absolutely helpless in that situation as he held L.H., and had to watch officers rip L.H. from his arms and rush him out to the ambulance while L.H. screamed and cried, calling out for his dad. Throughout body-worn camera recordings, C.P. repeatedly stated not to worry about him and to treat L.H. and asked for status updates on L.H. C.P. was transported to the hospital where he remained for days. He underwent surgery to stabilize his broken leg. C.P. still has a bullet lodged in his leg and has difficulty walking, muscle weakness, and pain. His visible scars are a constant reminder of this traumatic attack.

Four-year-old A.P. was also in the home during the shooting but was physically unharmed. A.P. observed her father, C.P., screaming in pain, and observed her brother, L.H., bleeding and crying as he was rushed out by police officers. The children's mother arrived on scene shortly after and was informed her son was shot and she needed to get to the hospital right away. She did not know the extent of his injuries or if he would survive.

J.O., an adult male, was in the home during the shooting but was physically unharmed.

In photographs taken of the home, countless bullet holes can be seen. Windows were broken, the walls and doors had holes, a TV was damaged, and pieces of drywall and drywall dust were scattered throughout the home from the bullets tearing through the walls. Officers described the home as being dusty (from drywall) and smoky still when they arrived.

Following the shooting, [Smith] returned home. He took his phone off airplane mode and promptly called M.L. again. He stated he obtained C.H.'s address from Google, accurately identified the vehicles present at

C.H.'s home at the time of the shooting and confessed to the shooting multiple times.

The following day, [Smith] sent messages attempting to trade some guns that he had, including a rifle.

[Smith] was arrested in his home and two guns were seized. The same rifle from his messages was found in the bathtub. [Smith] stated in a recorded jail call that he placed that rifle in the bathtub and hid it under pillows when police arrived. That rifle was analyzed and confirmed to have fired 12 of the recovered shell casings from the September shooting.

The 9mm gun used in the June shooting was never recovered, but the 9mm casings from the June shooting were analyzed and compared to the 9mm casings recovered in the September shooting, and they were determined to have been fired from the same gun.

[Smith] continued to obsess over M.L. while incarcerated, talking about her on numerous occasions, trying to call her, sending her tablet messages, and asking multiple people to text her, go to her house, and call her. At one point, [Smith] requested his friend post on [Smith's] Facebook [page] stating, 'Heard she was just on a block wit da same [racial slur] you [sic] was trynna pop.' [Smith] went on to say that those lyrics 'hit,' meaning he found them very relatable.

**The Combined Plea Hearing**

{¶ 9} On May 21, 2025, the trial court held a combined plea hearing.

{¶ 10} For the charges arising from the September 5, 2024 incident, involving multiple victims, Smith entered a plea of guilty to the following charges:

- **CR-2024-2387.** Count 2, including both attached specifications (pertaining to victim L.H.); Count 3, including the 3-year firearm specification (pertaining to victim C.P.); Count 4, excluding the attached specifications (pertaining to victim

A.P.); and Count 5, excluding the attached specifications (pertaining to victim J.O.); and

- **CR-2024-2536.** Count 1, excluding both attached specifications.

For the charges arising from the June 7, 2024 incident, Smith entered a guilty plea to:

- **CR-2024-2637.** Counts 1 and 2, including the attached 5-year drive-by shooting specifications.

{¶ 11} In exchange for Smith's guilty pleas, the State agreed to dismiss all remaining counts and specifications.

{¶ 12} The trial court, after finding that Smith had entered his guilty pleas knowingly, intelligently, and voluntarily, accepted his pleas. A pre-sentence investigation report was ordered, and the sentencing was scheduled for a later date.

**The Combined Sentencing Hearing**

{¶ 13} A combined sentencing hearing was held on June 11, 2025. At the outset of the proceeding, Smith waived his right to a hearing on his community control violation in case No. CR-2023-2979. Thereafter, the trial court heard from defense counsel, the prosecutor, and Smith himself.

{¶ 14} Prior to imposing sentence, the trial court determined that the convictions for attempted murder and felonious assault in case No. CR-2024-2637 would merge for purposes of sentencing, and the State requested the court to proceed with sentencing on the conviction for attempted murder, including the 5-year drive-by shooting specification.

{¶ 15} The trial court imposed sentence as follows:

8.

On 24-2637 on Count 1, the attempted murder, I'm going to issue a sentence of ten years, has a five year spec with it. On Count 2 the felonious assault, I'll do seven years. That has a five years spec on it, but I'm finding that the counts merge. So the resulting time on 2637 would be ten years plus if would have a tail. So that would be 10 to 15 plus the 5 year spec. So that would be 15 to 20.

[…]

On case 24-2536, Count 1 is attempted murder. The firearm specifications are being nolled. I'm going to issue a term of six years.

[…]

On case 24-2387, Count 2 is a felonious assault. I'm going to issue a sentence of three years on Count 2. There is, however, a three year and a five year firearm specification that do not merge. So that's 3 years plus 8 years for 11 years on Count 2. On Count 3 in case 24-2387, felonious assault with a three year spec, I'm going to give you three years plus a three year firearm specification which does not merge, makes that six years. In case 24-2387, felonious assault, I'm going to give two years on Count 4. Also felonious assault, Count 5, I'm going to give two years.

The trial court made the necessary findings and ordered that all of these sentences were to run consecutively, for an aggregate prison term of "42 to 47 years."

{¶ 16} As to the community control violation in case No. CR-2023-2979, the trial court ordered Smith to serve a prison term of seven years, to run concurrently with his other time.

{¶ 17} The trial court's June 17, 2025 judgment entries reflect the sentences as they were imposed at the sentencing hearing. In case No. CR2024-2637, the trial court ordered Smith to serve an "indefinite term of a minimum of 10 years to a maximum of 15 years in prison" on Count 1, attempted murder. In case No. CR2024-2536, the trial court

9.

ordered Smith to serve "6 years in prison" for attempted murder and ordered that the sentences be served consecutively to those imposed in case Nos. CR-2024-2387 and CR2024-2637. In case No. CR2024-2387, the trial court ordered Smith to serve "3 years in prison" for Counts 2 and 3, and "2 years in prison" for Counts 4 and 5. In addition the trial court ordered that the sentences for Counts 2, 3, 4, and 5, along with the sentences in case Nos. CR2024-2536 and CR2024-2637, be served consecutively.

## Assignments of Error

{¶ 18} On appeal, Smith asserts the following assignment of error:

I.    The trial court illegally imposed two separate five-year firearm specifications under R.C. 2941.146 (discharge of a firearm from a motor vehicle) for felonies that were committed as part of the same act or transaction, in violation of R.C. 2929.14(B)(1)(c)(iii), thereby requiring vacation of one of the mandatory five-year terms.

{¶ 19} The State, in its cross-appeal, asserts as its sole assignment of error:

I.    Appellant/Cross-Appellee Ethan Smith's sentence is contrary to law because the trial court did not impose indefinite sentences for each of his qualifying offenses under R.C. 2929.14.

## Law and Analysis

## Standard of Review

{¶ 20} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. *See State v. Orzechowski*, 2021-Ohio-985, ¶ 7.

**Smith's Assignment of Error**

{¶ 21} Smith argues in his assignment of error that the trial court erred by imposing sentences on the drive-by specifications in Count 2, felonious assault, related to victim L.H., in case No. CR2024-2387 (the September 5, 2024 shooting) and in Count 1, attempted murder, related to victim C.H., in case No. CR24-2637 (the June 7, 2024 shooting). According to Smith, imposition of sentence on these two specifications contravenes R.C. 2929.14(B)(1)(c)(iii), which prohibits courts from imposing an additional prison term for felonies committed as part of the same act or transaction.

{¶ 22} In this case, Smith was convicted of felonious assault, a felony of the second degree, in CR2024-2387, and attempted murder, a felony of the first degree, in CR2024-2536. Each conviction included a five-year firearm specification under R.C. 2941.146, the drive-by specification, concerning the discharge of a firearm from a motor vehicle.

{¶ 23} "'R.C. 2929.14(B)(1)(c)(iii) provides that a sentencing court shall not impose more than one additional prison term on an offender for a five-year drive-by specification "for felonies committed as part of the same act or transaction."'" *State v. Smith*, 2025-Ohio-2105, ¶ 13 (3d Dist.), quoting *State v. Moore*, 2023-Ohio-4445, ¶ 27 (2d Dist.), quoting R.C. 2929.14(B)(1)(c)(iii). "'In other words, "R.C. 2929.14(B)(1)(c)(iii) limits imposing a single five-year sentence on the 'drive-by' specification and provides that they must merge with the same five-year firearm specification in other counts 'for felonies committed as part of the same act or

transaction.'"'" *Smith* at *id.,* quoting *Moore* at *id.*, quoting *State v. Jarmon*, 2018-Ohio-4710, ¶ 27 (8th Dist.), quoting R.C. 2929.14(B)(1)(c)(iii). "'The Supreme Court of Ohio has defined the term "transaction" as a ""series of continuous acts bound by time, space and purposes, and directed toward a single objective."'"'" *Smith* at *id.*, quoting *Moore* at ¶ 28, quoting *State v. Wills*, 69 Ohio St.3d 690, 691 (1994), quoting *State v. Caldwell*, 1991 WL 259529, *12 (9th Dist. Dec. 4, 1991).

{¶ 24} In this case, Smith contends that R.C. 2929.14(B)(1)(c)(iii) limited the trial court to imposing a single five-year sentence on the drive-by specifications in case Nos. CR2024-2387 and CR2024-2637 because Smith's actions "were all driven to the same purpose and single objective, and were continuous in time and space." First, Smith argues that "[t]he unifying motive, intent, and animus is unmistakable," namely "Mr. Smith's obsessive romantic desire for M.L. and his corresponding murderous rage toward C.H., the perceived romantic rival who stood in his way." Smith further argues that he acted with "temporal continuity," using "the same weapon," in his "escalating chapters of one continuous transaction," i.e., in his successive attempts to murder C.H.

{¶ 25} Based on our review of the record, we conclude that the trial court did not err by imposing a five-year sentence as to each of the drive-by specifications in this case. Smith's insistence to the contrary notwithstanding, the challenged offenses were not committed as part of the same transaction. While his conduct may have been guided by the same motive, namely his "obsessive romantic desire for M.L. and his corresponding murderous rage toward C.H.," Smith's actions were not continuous in time or in space.

12.

Smith committed the challenged offenses approximately 3 months apart and at two separate locations. It is not enough that his motivation was the same for both offenses. Smith's assignment of error is therefore found not well-taken.

**The State's Assignment of Error**

{¶ 26} The State argues in its cross-appeal that the trial court erred by sentencing Smith to definite prison terms for each of his qualifying offenses under R.C. 2929.14(A) and R.C. 2929.144(B)(2).

{¶ 27} Under R.C. 2929.14(A), if an offender commits a first-degree or second-degree felony on or after March 22, 2019, the trial court is required to impose an "indefinite prison term with a stated minimum term selected by the court." R.C. 2929.14(A)(1)(a) and (A)(2)(a). At the sentencing hearing and in its sentencing entries, the trial court imposed definite sentences for the first- and second-degree felony convictions in case Nos. CR2024-2387 and CR2024-2536, which is contrary to R.C. 2929.14(A). This is evidenced by the trial court ordering that Smith "serve 6 years in prison" for the first-degree attempted murder conviction in CR2024-2536; "3 years in prison" for two of the second-degree felonious assault convictions in CR2024-2387, and "2 years in prison" for the remaining two second-degree felonious assault convictions in that case. Because the trial court did not comply with the mandatory requirements of R.C. 2929.14(A)(1)(a) and (A)(2)(a), Smith's sentence is contrary to law. *See State v. Wilson*, 2026-Ohio-216, ¶ 107 (6th Dist.), citing *State v. Chambers*, 2024-Ohio-3341, ¶ 211-214 (6th Dist.).

13.

{¶ 28} In response to the State's cross-assignment of error, Smith argues that the trial court sentenced him appropriately because it correctly determined his maximum sentence under R.C. 2929.144(B)(2), which outlines how a trial court is to determine a maximum sentence when it orders an offender to serve sentences for multiple qualifying first- and second-degree felonies consecutively. Although it is true that the trial court properly computed his maximum sentence, and it seems likely that the court intended the six, three, and two-year sentences to be the stated minimum terms for the stated convictions, "this does not change the fact that, as written, the court imposed a definite term instead of an indefinite one with a stated minimum term and a maximum term, as required by R.C. 2929.14(A)." *See Chambers* at ¶ 212. "'Where the trial court is imposing prison sentences on multiple counts under the Reagan Tokes Act, the trial court's sentence for each individual count should make clear that the prison term is a stated minimum sentence, as opposed to a definite sentence.'" *Id.*, quoting *State v. Searles*, 2022-Ohio-858, ¶ 33 (2d Dist.).

{¶ 29} "The stated minimum term and maximum term for an offense must be imposed at the sentencing hearing and included in the sentencing entry." *Chambers* at ¶ 213, citing *State v. Flow*, 2022-Ohio-4416, ¶ 54 (6th Dist.), citing R.C. 2929.144(C). Because the trial court did not impose a stated minimum term for the felonious assault charge at Smith's original sentencing hearing, we must remand this case for resentencing. *See Chambers* at ¶ 213.

14.

**Conclusion**

**{¶ 30}** The judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. The matter is remanded to the trial court for resentencing consistent with this opinion. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed, in part, and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, PJ.
_____
JUDGE

Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.